FILED

2011 MAR -7 AM 10: 55

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY

Proposed order Lodged

**DAVID L. RETZ,** pro se
2994 Buckboard Lane
Solvang, CA 93463
Phone: (805) 688-2147
Email: dretz@comware.us

**IN THE UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**DAVID L. RETZ,**
Plaintiff, pro se

vs.

**ONEWEST BANK, FSB; INDYMAC MORTGAGE SERVICES; NDeX West, LLC; Angela Leon, an individual; Ric Juarez, an individual; and DOES 1-10, inclusive,**
Defendants

Case No.: **11-CV-01743-VBF (FFMx)**

**EX PARTE NOTICE OF APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; CERTIFICATE OF DAVID L. RETZ RE: NOTICE TO DEFENDANTS**

Judge: **Hon. Valerie Baker Fairbank**
Complaint filed: **February 28, 2011**
Trial date: **(none)**

Plaintiff DAVID L. RETZ (hereinafter referred to as "Plaintiff"), representing himself pro se, moves this court for a Temporary Restraining Order, pursuant to Fed. R. Civ. P. Rule 65(b), restraining and enjoining Defendant NDeX West, LLC (hereinafter referred to as "NDeX"), Defendant OneWest Bank, FSB (hereinafter "OneWest"), their agents, employees, successors, attorneys, assigns,

and all persons in active concert and participation with it or them from engaging in or performing any act to deprive Plaintiff of his residence in and possession of the real property located at 2994 Buckboard Ln, Solvang, California 93463 including, but not limited to, instituting or maintaining sale proceedings on the property or from otherwise taking any steps whatsoever to deprive Plaintiff of his residence, impair his business to continue to operate on said property, or to impair or degrade the value of the property pending a hearing on the Order to Show Cause requested herein.

OneWest cancelled its offer to adjust Plaintiff's mortgage without notice, and issued a Notice of Default – received by Plaintiff in late 2010. Plaintiff had believed based on OneWest and others such as Fannie Mae and Congressman Gallegly's office that they would not foreclose during an adjustment. Plaintiff complained to the Office of Thrift Supervision, and shortly thereafter (in response) was called by a representive from OneWest, who offered to resolve (make right) the problem by re-attempting the adjustment, assuring Plaintiff that there was plenty of time before any sale date (estimated to be May 15th, "at the earliest").

**This is an emergency request.** Plaintiff relied upon the original promises of OneWest, and he acted in good faith to continue living and operating the business in the home under a simple mortgage adjustment; he was again <u>surprised</u> by the outcome. On February 12, 2011 (less than two weeks later) OneWest called Plaintiff to inform him it had "moved up" the sale date to March 12, 2011 – <u>more than two months earlier than the original sale date</u>. – thereby reversing its position on an ability to make "right" its mistake in initiating the foreclosure - "because there just wasn't enough time." This was not under initiation or control of Plaintiff, and instantly precluded any possible options of sale, business relocation, etc. that would exist in that timeframe.

Such a pattern of broken promises and deception leading to the Notice of Default – and now a potential loss of home, equity, and business - is the gravamen

of this complaint. The events of four weeks ago bring Plaintiff to this court as a last alternative - to seek justice and protection from a system that is usually trustworthy. Plaintiff is seeking temporary relief under the powers granted to the court by the U.S. Constitution to avoid further damages.

Unless this application is granted, Plaintiff and his business will suffer immediate and irreparable injury, loss, and damage. The property is scheduled to be sold at 1pm on March 9, 2011, thus depriving Plaintiff of his residence in and possession of his home, property, and business before a hearing can be had on the Order to Show Cause, as more fully set forth in the verified Complaint, the Memorandum that follows, and in the certificate attached hereto.

Dated this 7th day of March, 2011.

Respectfully submitted,

[signature]

DAVID L. RETZ, Plaintiff pro se
2994 Buckboard Ln.
Solvang, CA 93463

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff, representing himself, submits these points and authorities in support of his Motion for a Temporary Restraining Order ("TRO") and Order for Offer to Show Cause, as set forth in the Complaint file February 28, 2011.

This involves the real property at 2994 Buckboard Ln., Solvang, California, in which a foreclosure action was initiated by OneWest, and is being carried out by NdeX. This was to the surprise of Plaintiff, and is the unexpected result of a "HAMP" application of Plaintiff initiated in late August, 2010, as was described in Compl., (¶¶10-13, ¶¶27-28).

For the purpose of this memorandum, Plaintiff comes before the court to assert that: a) this is an emergency action; b) Plaintiff has a valid claim; c) sudden loss of *status quo* would bring irreparable injury and harm to Plaintiff; d) there is a significant potential harm to Public Interest; and e) the balance of potential harm would be significantly greater to Plaintiff

### A. Emergency Nature of Action

Plaintiff requests a Temporary Restraining Order under Fed. R. Civ. P. Rule 65(b) in order to preserve the status quo pending a full hearing on a preliminary injunction. Plaintiff had relied upon OneWest to attempt an adjustment; instead, OneWest suddenly moved "up" (i.e., advanced to an earlier date) the property sale date by over two months. To this date - most recently, on March 5, 2011 - Plaintiff is still receiving phone calls from OneWest saying the mortgage is still being "reviewed" for an adjustment.

Despite best efforts to perform an adjustment, such a change in the sale date precludes other options of a sale of the property and a relocation of the business contained therein.

//

**B. Plaintiff's Claims**

Plaintiff brings this action because there is a likelihood of success in proving that Defendants have violated several Federal and State statutes under the rubric of "mortgage adjustment." Specifically, the initial offer, as shown in Exhibit 1, was that "During the HAMP evaluation, the subject property for which the application has been received will not be referred to foreclosure ....". Additionally, the same offer represented that "Generally, our review process takes 30 days." This was not due to a lack of diligence on the part of Plaintiff in providing documentation.

OneWest has specifically violated California Civil Code §2923.5, whereby a notice of default should be provided. Such a lack in that regard is described in ¶¶64-65 of the Complaint, and in fact negates the validity of the Notice of Default, as described in ¶69.

OneWest ignored requests by plaintiff through use of a Qualified Written Request, violating 12 U.S.C §2605(e)(2). Plaintiff received no result to its request. These are a few of the seven causes of action described in the Complaint that provide credence to a successful outcome in this action.

**C. Sudden Loss of Status Quo Would Bring Irreparable Injury**

A foreclosure sale that would deprive Plaintiff of his home is scheduled to take place on March 9, 2011. this is clearly an immediate injury, and also constitutes an irreparable one. *Demarest vs. Quick Loan Funding, Inc. 009 WI 940377 at 9(C.D. Cal. 2009); Johnson v. U.S. Department of Agriculture 734 F.24 774, 789 (11th Cir. 1984)* ("irreparable injury is suffered when one is wrongfully ejected from his home. Real property and especially a home is unique"), and if the foreclosure sale goes forward, Plaintiff will do just that – lose his home of 23 years. Plaintiff's home is considered unique under the law, and if it is sold, he will not be able to purchase the same home anywhere else. The imminent prospect of permanently losing his home presents a thread of irreparable harm.

Seven years ago, Plaintiff made special arrangements to relocate his business on the Property. Such a relocation was expensive and complicated at the time, due to the nature of the data center and communications infrastructure of Internet service business. Such a relocation of the business requires months of planning, also entailing costs in duplication during the transition period in order to provide continuous 24-hour support. Providing relocation on a short notice (e.g., within two months), especially when there is no destination, is not possible. Disconnection of operating servers and communication lines would mean a termination of the business, bringing irreparable harm to Plaintiff's livelihood.

**D. Irreparable Harm to Public Interest**

The business provides networking and web hosting support to the local community, as well as a live weather station located on the Property. The business provides Internet support to over one hundred small businesses in the area of the "Santa Ynez Valley", providing functions such as online product sales and promotion of the area for tourism. Most importantly, some of the communications facilities – such as connections to remote vineyards – have taken months to engineer and set up, and their removal would have an economic impact on the associated businesses (one of which is the original and oldest and second-largest vineyard in the Santa Ynez Valley.)

**E. Harm Significantly Greater to Plaintiff**

The hardship weighs heavily in on the Plaintiff due to the minimal, speculative injury that might result if injunctive relief is granted – relative to the great irreparable harm Plaintiff would suffer if it were not. Because of this, injunctive relief should be granted.

Plaintiff respectfully submits that he has shown that a TRO, and then a preliminary injunction, should issue because while comparatively great and irreparable harm will certainly come from denying the requested relief, only speculative, minimal injury may occur to Defendants OneWest and NdeX if the request is granted. Furthermore, Plaintiff respectfully submits that on its face, Plaintiff's case has sufficient merit to warrant a finding that the status quo should be preserved until the controversy can be fully adjudicated. There is no basis for not granting the requested relief, especially where the balance of the hardships tips so overwhelmingly in favor of Plaintiff.

Plaintiff requests that the Court grant the TRO and then the preliminary injunction in order to restrain and enjoin Defendants OnWest, NdeX and their agents, assigns, employees, officers, attorneys, and representatives, and those in active concert or participation with them, pending trial of this action, from engaging in or performing any act to deprive Plaintiff of his residence in and possession of the real property located at 2994 Buckboard Lane, Solvang, California 93463, including but not limited to instituting or maintaining sale proceedings on the residence or from otherwise taking any steps whatsoever to deprive Plaintiff of his residence in and possession of the Property or impair or degrade the value of the Property.

Dated this 7th day of March, 2011.

Respectfully submitted,

DAVID L. RETZ, Plaintiff pro se
2994 Buckboard Ln.
Solvang, CA 93463

**CERTIFICATE OF DAVID L. RETZ RE: NOTICE**

I, David L. Retz, am the Plaintiff and I am representing myself in the above-captioned action. I make this certification to the Court pursuant to rule 65(b)(1)(B) of the Federal Rules of Civil Procedure:

1. For the reasons stated in the verified Complaint and the Applicaton for Temporary Restraining Order, I, and my business, will suffer irreparable injury if I were required to give a full 14 days of notice of this request for a restraining order as required by rule 6( c)(1) of the Fed.R.Civ.P.

2. Realizing that time is of the essence, on March 1, 2011 I contacted Defendant IndyMac Mortgage Services, Mr. Jeremy Bull – my most recent contact – to ascertain and to notify. Mr. Bull indicated (finally) that they would not adjust the sale date, and I informed him that we were seeking a temporary restraining order to prevent the sale. I asked him if that was a problem, and he said it certainly was not and he would continue to explore other adjustment options.

3 On March 1, 2011, I contacted the legal department of NdeX West, LLC – which is the law firm of Barrett, Daffin, Frappier, Turner & Engle, LLP (located at Suite 100 in the same building as NdeX West), and spoke with a Monica S. She had no problem with a rescheduling of the sale date, but requested the TRO notification be sent via Faxsimile at: (972) 661-7800.

4. I called OneWest Bank, FSB headquarters and spoke with a Matt Elmange, who referred me to the legal department. Matt connected me with a Jeff (Id=CN4) (no last name provided apparently for security purposes). I asked him if it we could change the sale date, and he said that he couldn't say if it were a "yay or a nay." He confirmed the mailing address for the legal department as: Corporate Legal, HQ-06-02, OneWest Bank, SB, 888 E. Walnut St., Pasadena, CA 91106.

5. I have taken all reasonable steps available to me at this point (and pending further investigation) to give the Defendants I am seeking to obtain the

best possible notice. In the event this notice is considered deficient, I argue that extraordinary circumstances justify a temporary restraining order without notice to Defendants because as shown in the verified Complaint, I will lose my house and business on March 9, 2011, if Defendants are not restrained, and loss of one's house and one's livelihood is irreparable harm as a matter of law. The harm, if any, that would inure to Defendants if the TRO is granted is minimal, as they would retain any and all security interest in the property.

I state under penalty of perjury that all of the facts set out in this certificate are true and correct to the best of my personal knowledge.

Dated this 7th of March, 2011.

David L. Retz

# Exhibit #1

HAMP Application Form, 2nd Page

(1 pages)

**Not All Borrowers Will Qualify for a Loan Modification Offer**



This invitation to submit information about your current income has been sent because you satisfied certain credit criteria derived from information based on the performance of your current IndyMac Mortgage Services loan.

We have not yet determined if you are eligible for a loan modification. Your completed financial packet, including income documentation, will be used to evaluate whether you are eligible for a modification or other workout, however IndyMac Mortgage Services is not obligated to offer you assistance based solely on the representations and information included in your submission. We reserve the right to verify the information you submit and request other information and/or documentation to fully evaluate your eligibility. IndyMac Mortgage Services follows the HAMP guidelines to determine eligibility for a loan modification to the extent permitted under our contractual agreements with the investors who own the loans we service. Not all borrowers who submit a completed financial packet will qualify for a loan modification. Currently, our modification programs are limited to owner-occupied properties.

This is not a firm offer for a modification and does not override any foreclosure proceedings that may be in process from moving forward as allowed by the servicing agreements.

**HAMP Application Requirements**

A borrower will be deemed to have requested consideration for HAMP when a complete application, including the four required items provided below, is received by IndyMac Mortgage Services. The following items must be submitted to IndyMac Mortgage Services for a borrower to be deemed to have requested consideration for HAMP:

1. Request for Modification and Hardship Affidavit form;
2. A completed and signed IRS Form 4506-T or 4506T-EZ;
3. Supporting income documentation required for each declared income source; and
4. Most recent two months bank statements for all borrowers.

Once you have completed our loan modification application and submitted your financial information we will first determine if you are eligible for HAMP based on your situation. To determine this, we will review the financial documents you submitted for verification of income and determine if you meet the requirements of HAMP. The documentation you submitted with your application will be either approved or rejected and you will receive a letter in the mail providing your application status and notification of any missing or rejected documents along with instructions on how to resubmit the correct documentation for review. Generally, our review process takes 30 days or less. B

During the HAMP evaluation, the subject property for which the application has been received will not be referred to foreclosure or be sold at foreclosure sale if the foreclosure process has already been initiated. A

**Borrowers in Foreclosure:**

If a foreclosure sale date has been scheduled, a complete application, including the above required items, must be received no later than midnight on the seventh business day prior to the foreclosure sale date in order to be considered for a modification. The foreclosure sale date will only be suspended if permitted by investor guidelines or approved by the investor and if the following conditions are met:

- The foreclosure sale date is less than 30 days from the current date, and
- A complete HAMP application has been received comprised of all of the above required items.

If the above conditions are met any pending foreclosure action may continue, however, no foreclosure sale will be conducted during the 30-day period in which a borrower is reviewed for HAMP eligibility.

**Borrowers Previously Denied for HAMP**

For borrowers previously evaluated for HAMP who did not successfully complete the HAMP Trial Period Plan or who were determined to be ineligible for HAMP, IndyMac Mortgage Services will consider an additional request for HAMP only if the below conditions are met:

- A significant change in the borrower or co-borrower's health has occurred, such as a serious illness or death, or
- More than a 20% increase has occurred between the verified income previously used to evaluate HAMP eligibility and the current income provided.
- The borrower has not increased other debt obligations since the previous evaluation.

Income changes may be due to any of the following:

- Borrower was previously unemployed and has recently secured employment;
- Co-borrower was not previously employed or was unemployed and is now employed;
- Borrower continues to be employed and now receives additional income from a new income source.

**This company is a debt collector and any information obtained will be used for that purpose. However, if you have filed a bankruptcy petition and there is either an "automatic stay" in effect in your bankruptcy case, or your debt has been discharged pursuant to the bankruptcy laws of the United States, this communication is intended solely for informational purposes.**




© 2010 IndyMac Mortgage Services, a division of OneWest Bank, FSB. Registered trade/service marks are the property of OneWest Bank, FSB and/or its subsidiaries.

5651