1
2
3
4
5
6
7
8
9

EDWARD A. TREDER
State Bar No. 116307
DEEPIKA S. SALUJA
State Bar No. 251665
BARRETT DAFFIN FRAPPIER
TREDER & WEISS, LLP
20955 Pathfinder Road, Suite 300
Diamond Bar, California 91765
(626) 915-5714 – Phone
(626) 915-0289 – Fax
edwardt@bdfgroup.com
deepikas@bdfgroup.com

10  Attorneys for Defendants

11        UNITED STATES DISTRICT COURT

12    CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| 13 DAVID L. RETZ individually and as<br>14 Trustee of the DAVID LESTER RETZ<br>REVOCABLE TRUST, dated February 12,<br>15 2007<br>16                                    Plaintiff,<br>17        v.<br>18 ONE WEST BANK, F.S.B., a federal<br>savings banking chartered under the laws<br>19 of the United States of America doing<br>business as INDYMAC MORTGAGE<br>20 SERVICES, NDEx West, LLC a limited<br>liability Corporation organized and<br>21 existing under the laws of the State of<br>22 Delaware and FEDERAL NATIONAL<br>MORTGAGE ASSOCIATION, a federally<br>23 chartered enterprise chartered under an act<br>of the Congress of the United States of<br>24 America<br>25<br>26                                    Defendants. | CASE NO.  2:11-cv-01743-SVW-FFM<br><br>**OPPOSITION OF DEFENDANTS<br>TO PLAINTIFF'S REQUEST FOR<br>A PRELIMINARY INJUNCTION**<br><br>DATE:       May 9, 2011<br>TIME:       1:30 p.m.<br>CTRM.:       6<br><br>*[Filed concurrently with Request for<br>Judicial Notice]* |

27
28

# **TABLE OF CONTENTS**

I.    Introduction ................................................................................................ 2

II.   Retz has failed to properly tender all sums due, owing, and unpaid, and is not entitled to an injunction ............................................................................ 4

III.  The Anti-Injunction Act prohibits federal courts from enjoining state court proceedings. ............................................................................................... 6

IV.   Retz has not met his burden for a Preliminary Injunction under Rule 65(a) of the Federal Rules of Civil Procedure. ......................................................... 6

   A.   Retz cannot demonstrate a likelihood of immediate irreparable injury. ........... 7

   C.   Retz cannot show a likelihood of success on the merits. ..................................... 8

      1.   Retz' first claim fails because default is a prerequisite for review under HAMP. ........................................................................................ 8

      2.   Retz' first claim also fails because he has no private right of action under HAMP. ................................................................................ 9

      3.   Retz' second claim fails because a borrower may not bring an action to determine whether the owner of a note has authorized nonjudicial foreclosure. ................................................................................... 12

      4.   Retz' second claim also fails because Fannie Mae's authorization of the Loan Servicer to enforce the note is consistent with the commercial code. ............................................................................................. 14

V.    Any Preliminary Injunction should be conditioned upon an undertaking ............... 15

VI.   Conclusion ................................................................................................ 16

# TABLE OF AUTHORITIES

## Federal Cases

*Aleem v. Bank of Am.*,

    2010 WL 532330 (C.D. Cal., Feb. 9, 2010) ........................................................ 10

*Alliance for the Wild Rockies v. Cottrell*,

    632 F.3d 1127 (9th Cir. 2011). ................................................................................ 7

*Benito v. Indymac Mortgage Servs.*,

    2010 WL 2130648 (D.Nev., May 21, 2010) ...................................................... 10

*Burtzos v. Countrywide Home Loan*,

    2010 WL 2196068 (S.D. Cal., June 1, 2010) ...................................................... 10

*Caribbean Marine Services Co., Inc. v. Baldridge*,

    844 F.2d 668 (9th Cir. 1988) .............................................................................. 6, 7

*Escobedo v. Countrywide Home Loans, Inc.*,

    2009 WL 4981618 (S.D. Cal., Dec. 15, 2009) ................................................... 10

*Gallardo v. Wells Fargo Bank N.A.*,

    2010 WL 4345736 (C.D. Cal., Oct. 26, 2010) ................................................... 10

*Hammonds v. Aurora Loan Sers. LLC*,

    2010 WL 3859069 (C.D. Cal., Sep. 27, 2010) .............................................. 10, 12

*Hoffman v. Bank of Am., N.A.*,

    2010 WL 2635773 (N.D. Cal., June 30, 2010) ............................................. 10, 12

*Joern v. Ocwen Loan Servicing, LLC*,

    2010 WL 3516907 (E.D. Wash., Sept. 2, 2010) ................................................. 11

*Lane v. Vitek Real Estate Industries Group*,

    713 F.Supp.2d 1092(E.D. Cal. 2010) .................................................................. 13

*Marks v. Bank of Am., N.A.*,

    2010 WL 2572988 (D.Ariz., June 22, 2010) ...................................................... 11

*Marques v. Wells Fargo Home Mortgage, Inc.*,

    2010 WL 3212131 (S.D. Cal., Aug. 12, 2010) ................................... 12

*Reyes v. Saxon Mortgage Servs., Inc.*,

    2009 WL 3738177 (S.D. Cal., Nov. 5, 2010) ..................................... 12

*Simmons v. Countrywide Home Loans, Inc.*,

    2010 WL 2635220 (S.D. Cal., June 29, 2010) ................................... 11

*Simon v. Bank of Am., N.A.*,

    2010 WL 2609436 (D. Nev., June 23, 2010) ..................................... 11

*Van Nguyen v. BAC Home Loan Servs., LP*,

    2010 WL 3894986 (N.D. Cal., Oct. 1, 2010) ..................................... 11

*Vasquez v. Bank of Am. Home Loans*,

    2010 WL 3385347 (D. Nev., Aug 23, 2010) .................................. 9, 11

*Vega v. JP Morgan Chase Bank, N.A.*,

    654 F.Supp.2d 1104 (2009 E.D. Cal.) ................................................. 4

*Villa v. Wells Fargo Bank, N.A.*,

    2010 WL 935680 (S.D. Cal., March 15, 2010) ..................................... 9

*Winter v. Natural Res. Def. Council*,

    555 U.S. 7 (2008) ............................................................................ 6, 7

*Wright v. Bank of Am., N.A.*,

    2010 WL 2889117 (N.D. Cal., July 22, 2010) ..................................... 9

*Zeller v. Aurora Loan Servs., LLC*,

    2010 WL 3219134 (W.D. Va., Aug. 10, 2010) ................................... 12

*Zendejas v. GMAC Wholesale Mortgage Corp.*,

    2010 WL 2490975 (E.D. Cal., June 16, 2010) ................................... 12

## <u>State Cases</u>

*Abdallah v. United Savings Bank*,

    43 Cal.App.4th 1101 (1996) ............................................................ 4, 5

*Gaffney v. Downey Savings and Loan Assoc.*,

    200 Cal.App.3d 1154 (1988) ........................................................................ 5

*Gomes v. Countrywide Home Loans, Inc.*,

    192 Cal.App.4th 1149 (2011) ............................................................... 13, 14

*Karlsen v. American Savings and Loan Assoc.*,

    15 Cal.App.3d 112 (1971) ...................................................................... 4, 5

*Leonard v. Bank of America National Trust and Savings Assoc.*,

    16 Cal.App.2d 341 (1936) ...................................................................... 4, 5

*Lu v. Hawaiin Gardens Casino, Inc.*,

    50 Cal.4th 592 (2010) ............................................................................... 13

*MCA, Inc. v. Universal Diversified Enterprises Corp.*,

    27 Cal.App.3d 170 (1972) ...................................................................... 4, 5

*Moeller v. Lien*,

    25 Cal.App.4th 822 (1994) ................................................................ 12, 13

*Shimpones v. Stickeney*,

    219 Cal. 637 (1934) ................................................................................ 4, 5


## Federal Statutes

Fed. R. Civ. P. 65(a) ............................................................................... 6, 7

Fed. R. Civ. P. 65(c) .................................................................................. 15

28 U.S.C. § 2283 ......................................................................................... 6


## State Statutes

Cal. Civ. Code §§ 1486, 1493, 1494, and 1495 ............................................ 5

Cal. Civ. Proc. Code § 1161a(b)(3) ............................................................... 6

Cal. Com. Code § 3301 ............................................................................... 15

Cal. Gov't. Code § 68603 ......................................................................... 7, 8

1

Cal. Gov't. Code § 68620 ..............................................................................7, 8

2

3

**California Rules**

4

Cal. Rules Court Standards of Jud. Admin, Standard 2.2(i).......................................7, 8

5

6

**Other Authorities**

7

Fannie Mae Announcement 08-12,

8

    *Note Holder Status for Legal Proceedings Conducted in the Servicer's Name*

9

    *(May 23, 2008)* ..............................................................................14

10

Making Homes Affordable Program,

11

    Handbook for Servicers of Non-GSE Mortgages, Version 3.0

12

    (Dec. 2, 2010) ..............................................................................8

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.      Introduction

Plaintiff David Retz ("Retz") first obtained title to the property located at 2994 Buckboard Lane, Solvang, California (the "Property") in 1987 with a purchase money loan for $218,400.00.[1]    Since then, Retz has increasingly borrowed against the Property on at least five different occasions, each time further stripping the Property of its equity.  In 1989 Retz borrowed $63,000.00,[2] in 1992 he borrowed $280,000.00,[3] in 2002 he borrowed $320,000.00,[4] in 2003 he borrowed $325,000.00,[5] and in 2007 he took out $400,000.00 against the Property.[6]  The $400,000.00 Loan (the "Loan") is the Loan at issue in this case.  It was evidenced by a promissory note signed by Retz and was secured by a first priority deed of trust (the "Deed of Trust") against the Property.[7] Mortgage Electronic Registration Systems, Inc. ("MERS") was the original beneficiary of the Deed of Trust, solely as Nominee for Lender Indymac Bank, F.S.B., its successors and assigns.[8]

By his own admission, Retz stopped making payments on the Loan in July 2010 and non-judicial foreclosure proceedings were commenced.[9]    The Loan was subsequently assigned to Defendant One West Bank, FSB,[10] and then to Defendant Fannie Mae also known as Federal National Mortgage Association ("Fannie Mae").[11] On February 14, 2011, Defendant NDeX West, LLC – the successor trustee under the Deed of Trust – recorded a Notice of Trustee's Sale, stating its intent to sell the

---

[1] Request for Judicial Notice ("RJN"), Ex. 1.
[2] RJN, Ex. 2
[3] RJN, Ex. 3.
[4] RJN, Ex. 4.
[5] RJN, Ex. 5.
[6] RJN, Ex. 6.
[7] *Id.*
[8] *Id.*
[9] RJN, Ex. 7.
[10] RJN, Ex. 8.
[11] RJN, Ex. 11.

1    Property at public auction on March 9, 2011.[12]   On March 9, 2011, the Property was

2    sold at public auction to Fannie Mae for the total debt bid of $413,261.27.  Title was

3    duly perfected by Trustee's Deed Upon Sale recorded on March 18, 2011 in the Office

4    of the Santa Barbara County Recorder.[13]

5         On April 15, 2011, Retz filed an Ex Parte Application for a Temporary

6    Restraining Order to prevent Fannie Mae from evicting him from the Property.  The

7    Court denied the request for a Temporary Restraining Order but scheduled an Order to

8    Show Cause regarding a Preliminary Injunction for May 9, 2011.

9         But the First Amended Complaint ("FAC"), and request for a preliminary

10   injunction staying all eviction proceedings are without merit.   The preliminary

11   injunction should be denied because Retz has not met his burden: (1) he has not

12   tendered – or expressed any ability or willingness to tender – the amount of his debt

13   due; (2) the Anti-Injunction Act prohibits federal courts from enjoining state court

14   proceedings; (3) he cannot demonstrate a likelihood of immediate irreparable injury;

15   and (4) he cannot demonstrate a likelihood of success on the merits because (a) he

16   knowingly and voluntarily defaulted to be eligible for a loan modification review

17   under HAMP; (b) he has no private right of action under HAMP; (c) under *Gomes* he

18   has no private right of action to challenge the authority to progress the non-judicial

19   foreclosure; and (d) Fannie Mae's policy of progressing of the non-judicial foreclosure

20   by the servicer as holder of the note is consistent with the commercial code.

21        Thus, in ruling on the Order to Show Cause regarding the Preliminary

22   Injunction, the Court need only address one simple question: Has Retz sufficiently met

23   his burden to obtain a Preliminary Injunction staying all eviction proceedings on the

24   Property?

25

26   _____

27   [12] RJN, Exs. 9 and 10.

28   [13] RJN, Ex. 12.

## II. Retz has failed to properly tender all sums due, owing, and unpaid, and is not entitled to an injunction

Retz' attempt to stay all eviction proceedings is premised upon his allegations that the foreclosure sale was invalid, and should thus be set aside, because the only reason he failed to make his payments as they became due was because One West Bank, FSB purportedly told him not to make any payments. Retz alleges that absent this direction by One West Bank, FSB, he would have made his payments and would not have been in default. Notably, however, Retz fails to offer an explanation for his failure to make payments after receiving the Notice of Default in November 2010. More important, Retz fails to allege that he offered to tender the amount due on the Loan prior to the sale. Further, he fails to allege an ability to tender now or any time in the foreseeable future. Presumably, this is because he was, and still is, unable to do so. Thus, as discussed below, he is barred from maintaining any cause of action concerning the alleged invalidity of a foreclosure sale

A borrower who seeks to enjoin or to set aside a foreclosure sale invokes the Court's equitable powers and is therefore required "to do equity" by tendering full payment of all undisputed sums due, owing and unpaid as a condition precedent to maintaining any cause of action against his mortgage lender.[14]   As one of the California state's appellate courts has explained:

> . . . it appears without any conflict that the plaintiff was both at the time of the exercise of the power of foreclosure and is now in substantial default in the performance of the obligation of her contract and that she has in no manner shown by the evidence any ability to presently relieve herself

---

[14] *Karlsen v. American Savings and Loan Assoc.*, 15 Cal.App.3d 112, 117 (1971) [92 Cal.Rptr. 851]; *Shimpones v. Stickeney*, 219 Cal. 637, 649 (1934) [28 P.2d 673]; *Abdallah v. United Savings Bank*, 43 Cal.App.4th 1101, 1109 (1996) [51 Cal.Rptr.2d 286]; *MCA, Inc. v. Universal Diversified Enterprises Corp.*, 27 Cal.App.3d 170, 177 (1972) [103 Cal.Rptr. 522]; *Vega v. JP Morgan Chase Bank, N.A.*, 654 F.Supp.2d 1104, 1112 (2009 E.D. Cal.) [citing *Karlsen* at 117 "[t]o enjoin a foreclosure sale due to non-judicial foreclosure defects, the trustor must in good faith tender amounts to cure the default.].

from such defaults.  Equity will not interpose its remedial power in the accomplishment of what seemingly would be nothing by an idly and expensively futile act, nor will it purposely speculate in a field where there has been no proof as to what beneficial purpose may be subserved through its intervention.[15]

According to *Gaffney v. Downey Saving and Loan Association*, "it is a debtor's responsibility to make an unambiguous tender of the entire amount due or else suffer the consequence that the tender is of no effect."[16]  To be effective, the tender, if made, must be made in good faith, the party making the tender must have the present ability to perform, and he must offer full and unconditional performance of his obligations.[17]  Tender is required because an action to enjoin a foreclosure sale invokes the Court's **equitable powers**, and thus, a borrower seeking to enjoin a foreclosure sale is required "to do equity" by tendering full payment of all undisputed sums due, owing and unpaid as a condition precedent to maintaining any cause of action against her mortgage lender.[18]  Thus, a borrower who fails to allege compliance with these tender requirements is barred from maintaining any cause of action concerning the alleged invalidity of a foreclosure sale.[19]

Retz alleges that he stopped making payments on the Loan in July 2010 because One West Bank, FSB told him to stop making payments.  Absent this instruction, he alleges, he would never have stopped making payments and would not have been in default.  But nowhere does Retz allege that he was able to tender the amount due prior to the sale.  In fact, nowhere does Retz explain why he did not resume – or at least

---

[15] *Leonard v. Bank of America National Trust and Savings Assoc.*, 16 Cal.App.2d 341, 344 (1936) [60 P.2d 325]; *Karlsen*, 15 Cal.App.3d at 117.

[16] *Gaffney v. Downey Savings and Loan Assoc.*, 200 Cal.App.3d 1154, 1165 (1988) [246 Cal.Rptr.421].

[17] Cal. Civ. Code §§ 1486, 1493, 1494, and 1495.

[18] *Shimpones v. Stickeney*, 219 Cal. at 649; *Abdallah v. United Savings Bank*, 43 Cal.App.4th at 1109; *MCA, Inc* 27 Cal.App.3d at 177; *Karlsen*, 15 Cal.App.3d at 117.

[19] *Karlsen v. American Savings and Loan Assoc.*, *supra*, 15 Cal.App.3d at 117 (affirming judgment on the pleadings where borrower failed to allege a proper tender).

attempt to resume – making payments after notification of Default in November 2010. The sale did not occur until March 2011, but nowhere does Retz explain why he failed to make payments between receiving the November 2010 Notice of Default and the sale in March 2011.

The FAC seeks to set aside the foreclosure sale, but the law is clear, a borrower who fails to allege a tender of all undisputed sums due is barred from maintaining any cause of action challenging the foreclosure sale. Therefore, Retz is not likely to prevail on the merits of his complaint and his request for a Preliminary Injunction must be denied.

## III.   The Anti-Injunction Act prohibits federal courts from enjoining state court proceedings.

Under 28 U.S.C. § 2283, the Anti-Injunction Act, federal courts are prohibited from enjoining state court proceedings.[20]   California Code of Civil Procedure, §1161a(b)(3) provides the cause of action to evict holdover occupants following a non-judicial foreclosure in accordance with California Civil Code § 2924.[21]   Thus, any eviction proceeding – and any judgment obtained in such a proceeding – to remove Retz from the Property following the non-judicial foreclosure sale is a state court proceeding, which cannot be enjoined by the federal court.  Therefore, Retz' request for a Preliminary Injunction should be denied.

## IV.   Retz has not met his burden for a Preliminary Injunction under Rule 65(a) of the Federal Rules of Civil Procedure.

A plaintiff seeking a preliminary injunction must demonstrate that: (1) he is likely to succeed on the merits of his complaint; (2) he will suffer immediate irreparable injury – the risk of irreparable harm in the indefinite future is not enough,

---

[20] 28 U.S.C. § 2283.
[21] Cal. Civ. Proc. Code § 1161a(b)(3).

the harm must be shown to be imminent[22] – if the injunction is not issued; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest.[23] Alternatively, the Court may issue a preliminary injunction upon a showing of either: (1) a combination of success on the merits and a likelihood of irreparable injury if injunctive relief is denied; or (2) although serious questions are raised as to the likelihood of success on the merits, the balance of hardships tips sharply in plaintiff's favor.[24]   Although this alternative showing provides flexibility, the underlying requirements don't change: plaintiff must demonstrate both (1) a likelihood of success on the merits and (2) a likelihood of imminent irreparable injury in the absence of injunctive relief to be entitled to a preliminary injunction.[25]  Retz cannot do this.

### A. Retz cannot demonstrate a likelihood of immediate irreparable injury.

Retz claims he will suffer irreparable injury if he is evicted from the Property because he operates a business out of his home that will take time and effort to relocate.   This is not sufficient to qualify as an "imminent" or "immediate" harm because no lockout has been scheduled.  In fact, as of the date of the hearing on the Ex Parte Application no case had been filed to evict Retz from the Property.

As discussed, California Code of Civil Procedure § 1161a(b)(3) authorizes an unlawful detainer action to evict Retz following the non-judicial foreclosure under California Civil Code § 2924.  The goal for disposition of unlawful detainer cases is "90% disposition within 30 days, and 100% within 45 days after filing."[26]  Thus, at the very least, Retz will have 30 days from the filing of the unlawful detainer complaint until judgment is entered in the action.  Following judgment a writ of execution will have to be executed and a lockout scheduled.  Thus, at the very least, lockout is still

---

[22] *Carribbean Marine Services Co., Inc. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988).
[23] Fed. R. Civ. P. 65(a); *Winter v. Natural Res. Def. Council*, 555 U.S. 7, (2008) [129 S.Ct. 365].
[24] *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134 (9th Cir. 2011).
[25] *Winter*, 555 U.S. 7 [expressly overruling the granting of a preliminary injunction upon a showing of a mere possibility of irreparable injury].

more than 30 days away, which, arguably, provides Retz with plenty of time to relocate his business.  Therefore, there is no likelihood of immediate irreparable injury and his request for a Preliminary Injunction should be denied.

### C. Retz cannot show a likelihood of success on the merits.

Retz' complaint seeks to set aside the foreclosure sale, but, as discussed, Retz' failure to allege a tender of all undisputed sums due prohibits him from maintaining any claims challenging the validity of the foreclosure sale.  Thus, Retz cannot establish a likelihood of success on the merits.

The FAC is also unlikely to prevail on the merits because: (1) Retz knowingly and voluntarily defaulted to be eligible for a loan modification review under HAMP; (2) Retz has no private right of action under HAMP; (3) Retz has no private right of action to challenge a lender's standing to progress a non-judicial foreclosure; and (4) Fannie Mae's policy of progressing the non-judicial foreclosure in the servicer's name complies with the commercial code.  Thus, Retz will not prevail on the merits of his complaint and his request for a Preliminary Injunction should be denied.

### 1. Retz' first claim fails because default is a prerequisite for review under HAMP.

To be eligible for a loan modification review under the Home Affordable Modification Program ("HAMP"), the mortgage loan must be delinquent or default must be reasonably foreseeable.[27]  Exhibit D to the FAC, what Retz calls "The Invitation to Apply for a Loan Modification" specifies that the application for the loan modification is under HAMP and that HAMP was designed to help borrowers experiencing financial hardship.  Thus, if Retz wanted to be reviewed under HAMP, then he should have been aware that only loans in default are eligible for a HAMP

---

[26] Cal. Rules Court Standards of Jud. Admin, Standard 2.2(i); Cal. Gov't. Code §§ 68603 and 68620.
[27] Making Homes Affordable Program, Handbook for Servicers of Non-GSE Mortgages, Version 3.0 (Dec. 2, 2010), 41, available at:
https://www.hmpadmin.com/portal/programs/docs/hamp_servicer/mhahandbook_30.pdf.

review and should not have been surprised to receive a Notice of Default. Stated otherwise, to try and modify his Loan and reduce his monthly payments, Retz knowingly defaulted on his Loan so that he would be eligible for review under HAMP. The risk didn't pay off and now he's attempting to point the finger at Defendants – as if Defendants forced him to default. But this claim is unsubstantiated because nowhere does the "Invitation," or the letter dated July 23, 2010 (and attached as Exhibit E to the FAC), or the letter dated July 26, 2010 (attached as Exhibit F to the FAC) ever advise Retz to stop making payments.

Further, the FAC fails to allege that Retz resumed – or at least attempted to resume – making payments after receiving the Notice of Default. If the Default was such a surprise then, presumably, after notice of the default, Retz would have resumed making payments. Retz' declaration in support of the Ex Parte Application attempts to allege that he has "always been willing to resume payments."[28] But this simple general statement, without any supportive evidence is insufficient to establish that he actually did resume payments or to allege a good faith tender of the delinquent amount due under the Loan. Thus, Retz' first claim fails and his request for a Preliminary Injunction should be denied.

### 2. Retz' first claim also fails because he has no private right of action under HAMP.

Retz cannot allege a breach of contract claim as a third party beneficiary under any HAMP Servicer Provider Agreement ("HAMP SPA"). Under the HAMP program "[a] loan modification is never guaranteed"[29] and "the HAMP agreement [does] not require loan servicers to modify eligible loans."[30] Thus, as the Central District of

---

[28] Retz Declaration in Support of Ex Parte Application at 3:1-6 (¶4).
[29] *Wright v. Bank of Am., N.A.*, 2010 WL 2889117 at *4 (N.D. Cal., July 22, 2010).
[30] *Villa v. Wells Fargo Bank, N.A.*, 2010 WL 935680 at *3 (S.D. Cal., March 15, 2010). *See Vasquez v. Bank of Am. Home Loans*, 2010 WL 3385347 at *1 (D. Nev., Aug 23, 2010) ("[A] borrower could not require [a lender] to make any particular loan modification under the HAMP program.").

California has held, "[p]laintiffs do not have standing to pursue a private cause of action against [the beneficiary and/or servicer] for allegedly violating the HAMP agreement.  Plaintiffs are merely incidental beneficiaries to the HAMP agreement and therefore cannot pursue this claim against [the beneficiary and/or servicer]."[31]

In addition to the findings in the Central District, a number of cases have found that a borrower has no right to sue her loan servicer as a third party beneficiary under the servicer's HAMP Agreement.  For example:

- *Benito v. Indymac Mortgage Servs.*, 2010 WL 2130648 at *7 (D.Nev., May 21, 2010): "Although the overall HAMP program undoubtedly has a goal of assisting homeowners, the HAMP contract does not express any intent to grant borrowers a right to enforce the HAMP contract between the borrower and the loan servicer."

- *Burtzos v. Countrywide Home Loan*, 2010 WL 2196068 at *2 (S.D. Cal., June 1, 2010): "[B]orrowers. . . are incidental, but are not intended, beneficiaries and, therefore, lack standing to sue for an alleged breach of the Servicer Agreement."

- *Escobedo v. Countrywide Home Loans, Inc.*, 2009 WL 4981618 at *3 (S.D. Cal., Dec. 15, 2009): "Qualified borrowers are incidental beneficiaries of the Agreement and do not have enforceable rights under the contract."

- *Hoffman v. Bank of Am., N.A.*, 2010 WL 2635773 at *5 (N.D. Cal., June 30, 2010): "[T]he Court finds that borrowers are not third party beneficiaries under the HAMP servicer's agreement."

---

[31] *Gallardo v. Wells Fargo Bank N.A.*, 2010 WL 4345736 at *3 (C.D. Cal., Oct. 26, 2010).  *See Hammonds v. Aurora Loan Sers. LLC*, 2010 WL 3859069 (C.D. Cal., Sep. 27, 2010) (dismissing breach of contract claim because borrowers are only "incidental beneficiar[ies] of the contract between Defendant and the government."); *Aleem v. Bank of Am.*, 2010 WL 532330 at *4 (C.D. Cal.,

- *Joern v. Ocwen Loan Servicing, LLC*, 2010 WL 3516907 at \*5 (E.D. Wash., Sept. 2, 2010): dismissing "contract claims" because "Plaintiffs have not clearly identified any terms of the SPA/HAMP which clearly expresses an intent to confer third party beneficiary status upon them."

- *Marks v. Bank of Am., N.A.*, 2010 WL 2572988 at \*5 (D.Ariz., June 22, 2010): "Because Plaintiff is not an intended beneficiary of the agreement between Defendant and the U.S. Dept. of Treasury, Plaintiff does not have standing to sue for a breach of contract claim."

- *Simmons v. Countrywide Home Loans, Inc.*, 2010 WL 2635220 at \*5 (S.D. Cal., June 29, 2010): "The Court's independent review has found no language in the Agreement which would rebut the presumption that qualified borrowers are merely incidental beneficiaries to the Agreement."

- *Simon v. Bank of Am., N.A.*, 2010 WL 2609436 at \*10 (D. Nev., June 23, 2010): "Other district courts have consistently held that the Home Affordable Modification Program does not provide borrowers with a private cause of action against lenders for failing to consider their application for loan modification, or even to modify an eligible loan."

- *Van Nguyen v. BAC Home Loan Servs., LP*, 2010 WL 3894986 at \*4 (N.D. Cal., Oct. 1, 2010): "[N]umerous courts have . . . concluded that mortgage loan borrowers do not have standing as intended 'beneficiaries' of HAMP SPAs."

- *Vasquez*, 2010 WL 3385347 at \*1: "Plaintiffs have no probability of success on the merits because they lack standing to sue for breach of the Servicer Participant Agreements."

---

Feb. 9, 2010) ("There is no express or implied right to sue fund recipients . . . under TARP or HAMP.").

- *Zeller v. Aurora Loan Servs., LLC*, 2010 WL 3219134 at *1 (W.D. Va., Aug. 10, 2010): "[N]owhere in the HAMP Guidelines . . . does it expressly provide for a right of action."

- *Zendejas v. GMAC Wholesale Mortgage Corp.*, 2010 WL 2490975 at *3 (E.D. Cal., June 16, 2010): "Plaintiffs Have No Standing to Assert HAMP."

Two cases – *Reyes v. Saxon Mortgage Servs., Inc.*[32] and *Marques v. Wells Fargo Home Mortgage, Inc.*[33] – find that a borrower might state a claim as a third party beneficiary under a HAMP SPA, but these are inconsequential. *Reyes* is sparse on analysis and the same judge came to the opposite conclusion (with extensive analysis) in *Villa*. *Marques* is an outlier and the Central District of California has already rejected it.[34]

"[I]t would be unreasonable for a qualified borrower seeking a loan modification to rely on the HAMP servicer's agreement . . . since the agreement does not actually require that the servicer modify all eligible loan."[35]   Retz has no right to sue Defendants under the HAMP SPA.  Thus, his claims stand no chance of success and his request for a Preliminary Injunction must be denied.

### 3. Retz' second claim fails because a borrower may not bring an action to determine whether the owner of a note has authorized nonjudicial foreclosure.

California's non-judicial foreclosure scheme, set forth in California Civil Code §§ 2924 through 2924k, provides "a comprehensive framework for the regulation of a

---

[32] *Reyes v. Saxon Mortgage Servs., Inc.*, 2009 WL 3738177 (S.D. Cal., Nov. 5, 2010).
[33] *Marques v. Wells Fargo Home Mortgage, Inc.*, 2010 WL 3212131 (S.D. Cal., Aug. 12, 2010).
[34] *See Hammons*, 2010 WL 3859069 at *3 ("While the Court finds the *Marques* case well-reasoned and thorough, the Court nevertheless disagrees with the conclusion on third party beneficiary status.")
[35] *Hoffman*, 2010 WL 2635773 at *4.

nonjudicial foreclosure sale pursuant to a power of sale contained in a deed of trust."[36]
Every aspect of the exercise of the power of sale contained in a deed of trust is
governed by these provisions, and "[b]ecause of the exhaustive nature of this scheme,
California appellate courts have refused to read any additional requirements into the
non-judicial foreclosure statute."[37]

Nowhere do these statutes provide a borrower with a private cause of action "to
determine whether the person initiating the foreclosure process is indeed authorized"
and the California courts – most recently in *Gomes v. Countrywide Home Loans, Inc.* –
have seen no reason to imply such an action.[38]

Yet, in his second claim for relief, Retz appears to be doing just that: asserting a
claim challenging the Defendants' authorization to progress a non-judicial foreclosure
under the Deed of Trust.  But, as the *Gomes* Court recognized, "[b]y asserting a right
to bring a court action to determine whether the owner of the Note has authorized its
nominee to initiate the foreclosure process, [plaintiff] is attempting to [circumvent
California Civil Code §§ 2924 *et seq.* and] interject the courts into this comprehensive
nonjudicial scheme."[39]  Retz has identified no legal authority for such a lawsuit, and
"[n]othing in the statutory provisions establishing the nonjudicial foreclosure process
suggests that such a judicial proceeding is permitted or contemplated."[40]

This is because the non-judicial foreclosure "is less expensive and more quickly
concluded than judicial foreclosure, since there is no oversight by a court" and "[t]he
recognition of the right to bring a lawsuit to determine a nominee's authorization to
proceed with foreclosure on behalf of the noteholder would fundamentally undermine

---

[36] *Gomes v. Countrywide Home Loans, Inc.*, 192 Cal.App.4th 1149, 1154 (2011) [121 Cal.Rptr.3d
819] [citing *Moeller v. Lien*, 25 Cal.App.4th 822, 830 (1994) [30 Cal.Rptr.2d 777]].
[37] *Id.* [citing *Lane v. Vitek Real Estate Industries Group*, 713 F.Supp.2d 1092, 1098 (E.D. Cal.
2010)].
[38] *Gomes*, 192 Cal.App.4th at 1155 ([citing *Lu v. Hawaiin Gardens Casino, Inc.*, 50 Cal.4th 592, 596
(2010) [113 Cal.Rptr.3d 498]].
[39] *Gomes*, 192 Cal.App.4th at 1154.

the nonjudicial nature of the process and introduce the possibility of lawsuits filed solely for the purpose of delaying valid foreclosures."[41]

Simply put, Retz does not have a private right of action to challenge Defendants' authorization to progress the non-judicial foreclosure under the Deed of Trust. Therefore, he will not prevail on the merits of his second claim and his request for a Preliminary Injunction should be denied.

### 4. Retz' second claim also fails because Fannie Mae's authorization of the Loan Servicer to enforce the note is consistent with the commercial code.

Defendant Fannie Mae's Servicing Guide grants servicers, acting in their own names, the authority to represent Fannie Mae's interests in foreclosure proceedings as holder of the mortgage note.[42]  Specifically, for purposes of progressing a non-judicial foreclosure, Fannie Mae temporarily gives the servicer possession of the mortgage note.  "This temporary transfer of possession occurs automatically and immediately upon the commencement of the servicer's representation, in its name, of [Fannie Mae's] interests in the foreclosure. . .[43]  At the conclusion of the servicer's representation of Fannie Mae's interests in the foreclosure. . ., or upon the servicer ceasing to service the loan for any reason, possession automatically reverts to Fannie Mae, and Fannie Mae resumes being the holder, just as it was before the foreclosure."[44]

State otherwise, under Fannie Mae's Servicing Guide, when representing Fannie Mae's interests in a foreclosure, the servicer of the note is temporarily given possession of the note so it can progress the foreclosure as the holder of the note.  This

---

[40] *Id.*

[41] *Gomes*, 192 Cal.App.4th at 1155.

[42] Fannie Mae Announcement 08-12, *Note Holder Status for Legal Proceedings Conducted in the Servicer's Name* (May 23, 2008), available at: https://www.efanniemae.com/sf/guides/ssg/annltrs/pdf/2008/0812.pdf.

[43] *Id.* at 2.

[44] *Id.* at 3.

is entirely consistent with California Commercial Code § 3301 which provides that the following are considered "Person[s] entitled to enforce an instrument:" "(a) the holder of the instrument, [or] (b) a nonholder in possession of the instrument who has the rights of a holder."[45]

Here, as provided by Fannie Mae's Servicing Guide, Defendant One West Bank, FSB – as servicer of the Retz' note – was temporarily given possession of the note so it could progress the non-judicial foreclosure in its own name as holder of the note. Upon conclusion of the foreclosure, possession of the note automatically reverted back to Fannie Mae.  This is consistent with both the Commercial Code and Fannie Mae's Servicing Guide and, under both, Defendant One West Bank, FSB had the authority to progress the non-judicial foreclosure.  Thus, Retz' second claim must fail and his request for a Preliminary Injunction must be denied.

**V.      Any Preliminary Injunction should be conditioned upon an undertaking.**

Under FRCP 65(c), no party may be granted a preliminary injunction without first posting security "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."[46]

As discussed above, Retz is not entitled to a Preliminary Injunction staying any and all eviction proceedings because he has not demonstrated either the likelihood of (1) immediate irreparable harm or (2) success on the merits.  However, should the Court find a reason to grant his request for a Preliminary Injunction, it must condition this upon the posting of a security as determined by the court.  Thus, should the Court wish to grant Retz' request, Defendants respectfully request that any Preliminary Injunction be conditioned upon a posting of a security in an amount to be determined by the court.

---

[45] Cal. Com. Code § 3301.
[46] Fed. R. Civ. P. 65(c).

## VI.   Conclusion

Retz is not entitled to a Preliminary Injunction staying any and all eviction proceedings because (1) he has not tendered – or expressed any ability or willingness to tender – the amount of his debt due; (2) the Anti-Injunction Act prohibits federal courts from enjoining state court proceedings; (3) he cannot demonstrate a likelihood of immediate irreparable injury; and (4) he cannot demonstrate a likelihood of success on the merits because (a) he knowingly and voluntarily defaulted to be eligible for a loan modification review under HAMP; (b) he has no private right of action under HAMP; (c) under *Gomes* he has no private right of action to challenge the authority to progress the non-judicial foreclosure; and (d) Fannie Mae's policy of progressing of the non-judicial foreclosure by the servicer as holder of the note is consistent with the commercial code.  Thus, his request for a Preliminary Injunction should be denied.

BARRETT DAFFIN FRAPPIER TREDER & WEISS, LLP


Date: April 28, 2011        By:   */s/Deepika S. Saluja*
                            _____
                            DEEPIKA S. SALUJA, Attorneys for Defendants